STEVEN A. GIBSON, ESQ.
Nevada Bar No. 6656
sgibson@gibsonlowry.com
JODI DONETTA LOWRY, ESQ.
Nevada Bar No. 7798
jdlowry@gibsonlowry.com

GIBSON LOWRY BURRIS LLP
City Center West
7201 West Lake Mead Boulevard
Suite 503
Las Vegas, Nevada 89128
Telephone 702.541.7888
Facsimile 702.541.7899

Attorneys for Plaintiff
*Stephens Media LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| STEPHENS MEDIA LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>US COMMERCE ASSOCIATION, a business entity of unknown form; KELLY MCCARTNEY, an individual,<br><br>Defendants. | Case No.: 2:09-cv-2405<br><br>**COMPLAINT and DEMAND FOR JURY TRIAL** |

Stephens Media LLC ("Stephens") complains as follows, on information and belief, against US Commerce Association ("USCA") and Kelly McCartney ("McCartney"; collectively with USCA, "Defendants"):

1

## NATURE OF ACTION

1. This is an action for mark infringement under Section 32 of the Lanham Trademark Act of 1946 ("Lanham Act") (15 U.S.C. §1114), false designation of origin under Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)), mark dilution under Section 43(c) of the Lanham Act (15 U.S.C. §1125(c)), mark infringement under Nevada common law, mark dilution under Nevada Revised Statutes 600.435, misappropriation of licensable commercial properties under Nevada common law, and unjust enrichment, all arising from Defendants' unauthorized use of the mark BEST OF LAS VEGAS (the "Infringing Mark"). As a result of the unlawful actions set forth herein, Stephens seeks injunctive relief and the recovery of actual damages, statutory damages, treble damages, special damages, costs of suit, attorneys' fees, and/or such other relief as the Court may deem appropriate.

## PARTIES

2. Stephens is, and has been at all times relevant to this lawsuit, a Nevada limited-liability company with its principal place of business in Nevada.

3. Stephens is, and has been at all times relevant to this lawsuit, in good standing with the Secretary of State of Nevada.

4. USCA purports to have its principal place of business in Washington, D.C., but is not registered as an organization doing business in the District of Columbia with the Department of Consumer and Regulatory Affairs of the District of Columbia.

5. McCartney is an individual whose state of domicile is unknown.

6. Defendants jointly hold the registration for the World Wide Web site through which Defendants engage in the tortious activities described herein, www.us-ca.org (the "USCA Website").

7. McCartney directs and effectuates the tortious activities described herein through McCartney's alter ego and/or under McCartney's trade name USCA.

# JURISDICTION

8. This Court has original jurisdiction over Stephens' First, Second, and Third Causes of Action pursuant to §39 of the Lanham Act (15 U.S.C. §1121) because Stephens' First, Second, and Third Causes of Action arise under the Lanham Act.

9. This Court has supplemental jurisdiction over Stephens' Fourth, Fifth, Sixth, and Seventh Causes of Action pursuant to 28 U.S.C. §1367 because Stephens' Fourth, Fifth, Sixth, and Seventh Causes of Action are so related to Stephens' First, Second, and Third Causes of Action that Stephens' Fourth, Fifth, Sixth, and Seventh Causes of Action form part of the same case or controversy under Article III of the United States Constitution.

10. Personal jurisdiction over USCA is proper because USCA has purposefully directed USCA's activities to residents of Nevada, which activities have resulted in the injuries to Stephens alleged herein.

11. Personal jurisdiction over McCartney is proper because McCartney has purposefully directed McCartney's activities, and caused USCA to direct USCA's activities, to residents of Nevada, which activities have resulted in the injuries to Stephens alleged herein.

# VENUE

12. This action is appropriately venued in the District of Nevada, pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events that give rise to Stephens' causes of action set forth herein took place in the District of Nevada, in that Defendants solicited customers under the Infringing Mark in the District of Nevada, and consumers in the District of Nevada are likely to be confused with respect to the source of Defendants' goods and services.

13. This action is appropriately venued in the District of Nevada, pursuant to 28 U.S.C. §1391(c), because Defendants are subject to personal jurisdiction in the District of Nevada.

# FACTS

14. Each year since 1982, the *Las Vegas Review-Journal* newspaper (the "*R-J*"), published by Stephens, has conducted a poll of *R-J* readers on a wide variety of subjects and

3

published the results in a special supplement to the *R-J* entitled BEST OF LAS VEGAS. Thousands of *R-J* readers cast ballots in the most recent BEST OF LAS VEGAS poll, which asked readers to name readers' preferences in over 200 categories, including, *e.g.,* steakhouses, concert venues, wedding chapels, and local television anchors.

15. In addition to the print version of the readers' poll, each year since 1998 the *R-J* has also conducted an online poll under the mark BEST OF LAS VEGAS at the *R-J*'s website. The results of both the print and online editions of the readers' poll are available on the *R-J*'s website.

16. The annual readers' poll conducted by the *R-J* under the mark BEST OF LAS VEGAS is a well-known feature of the *R-J* and has contributed to the success and growth of the *R-J*'s circulation, as well as to that of the related print and Internet publications of Stephens and Stephens' related entities.

17. Stephens is the assignee of certain trademarks and service marks registered with the United States Patent and Trademark Office (the "USPTO") as follows (collectively, the "Stephens Marks"):

   a. THE BEST OF LAS VEGAS and Design, Registration Number 2410131, International Class 16, with respect to a section of a newspaper featuring consumer preferences and recommendations regarding people, places, goods, services, restaurants, entertainment, arts, sports, and recreation in the Las Vegas area, first used in commerce with respect to such scope of use on or about March 24, 1996 and registered with the USPTO on December 5, 2000;

   b. THE BEST OF LAS VEGAS and Design, Registration Number 2519098, International Class 16, with respect to newspaper articles, periodicals, and pamphlets featuring general information about people, places, goods, services, restaurants, entertainment, arts, sports, and recreation, and also with respect to paper award certificates, first used in commerce with respect to such scope of use on or about March 24, 1996 and registered with the USPTO on December 18, 2001;

4

    c.  BEST OF LAS VEGAS, Registration Number 2572556, International Class 16, with respect to newspaper articles, periodicals, and pamphlets featuring general information about people, places, goods, services, restaurants, entertainment, arts, sports, and recreation, and also with respect to paper award certificates, first used in commerce with respect to such scope of use on or about February 12, 1984 and registered with the USPTO on May 28, 2002

    d.  BEST OF LAS VEGAS, Registration Number 2410129, International Class 35, with respect to promoting the sale of goods and services of others by conducting and disseminating business surveys featuring consumer preferences and recommendations regarding people, places, goods, services, restaurants, entertainment, arts, sports, and recreation in the Las Vegas area, first used in commerce with respect to such scope of use on or about February 12, 1984 and registered with the USPTO on December 5, 2000;  and

    e.  BEST OF LAS VEGAS, Registration Number 2410130, International Class 42, with respect to providing a web site featuring business and consumer preferences and recommendations regarding people, places, goods, services, restaurants, entertainment, arts, sports, and recreation in the Las Vegas area, first used in commerce with respect to such scope of use on or about October 31, 1997 and registered with the USPTO on December 5, 2000.

18. By virtue of Stephens' long-standing, extensively-advertised use of the Stephens Marks in the Las Vegas area, the Stephens Marks have gained secondary meaning primarily denoting Stephens as the Mark's source of origin.

19. Defendants are in the business of selling "award" plaques and trophies to small businesses by sending those small businesses e-mails (the "Solicitation E-Mails") in which Defendants represent that the small business receiving a particular e-mail has won a "Best of Las Vegas Award" from USCA.  Each Solicitation E-Mail depicts a simulacrum of an "award" plaque or trophy bearing the Infringing Mark and the name of the small business receiving the Solicitation E-Mail, and contains the following text:

5

> Each year, the US Commerce Association (USCA) identifies companies that we believe have achieved exceptional marketing success in their local community and business category.  These are local companies that enhance the positive image of small business through service to their customers and community.

20. A small business that has been designated as an "award" recipient by Defendants must pay Defendants, via USCA's website www.us-ca.org (the "USCA Website"), approximately $80.00 to receive an "award" plaque or $180.00 to receive an "award" trophy.

21. Defendants provide to each small business that has been designated as an "award" recipient by Defendants the opportunity to download from the USCA Website, and to publish as freely as the small business wishes, a press release identifying that business as the "winner" of one of Defendants' "awards" denominated by the Infringing Mark (the "Press Releases").

22. USCA is not actually a legitimate business or commerce association, but is merely a scheme, directed and effectuated by McCartney, to sell "award" plaques and trophies to unsuspecting small businesses.

23. The Better Business Bureau of Washington, D.C., in response to multiple inquiries and complaints from Defendants' "award" recipients, has given USCA a "BBB Rating" of "F," and newspapers throughout the United States have published articles warning readers not to fall victim to USCA's phony "award" schemes, identical in operation to the scheme conducted under the Infringing Mark, that Defendants have operated in those newspapers' locales.

24. At least as recently as September 15, 2009, Defendants sent a Solicitation E-Mail to a Las Vegas-area business and offered to that business the opportunity to:  (a) purchase an "award" plaque or trophy depicting the Infringing Mark, and (b) download a Press Release from the USCA Website.

25. Multiple Las Vegas-area businesses, which businesses have never been recognized in any of the preference surveys conducted under the Stephens Marks, have published on the Internet Defendants' Press Releases identifying those businesses as "Best of Las Vegas" award winners.

6

26. Neither McCartney nor USCA are affiliated with Stephens or any subsidiary of Stephens, and Stephens has not authorized McCartney or USCA to use in any manner the Stephens Marks or any variants thereof, including, but not limited to, the Infringing Mark.

27. Defendants used the Infringing Mark in interstate commerce in connection with Defendants' goods and services, specifically, on USCA's "awards," in the Solicitation E-Mails, and in the Press Releases.

28. Consumers and the public will improperly conclude that Stephens sponsors and/or is affiliated with USCA as a result of such consumers and the public observing the Infringing Mark on the Solicitation E-Mails, on USCA's "awards," and in published Press Releases.

29. The goodwill inuring to Stephens from the Stephens Marks is tarnished by any implication of apparent affiliation between Stephens and USCA as a result of Defendants' use of the Infringing Mark on the Solicitation E-Mails, on USCA's "awards," and on the Press Releases.

## FIRST CAUSE OF ACTION

## MARK INFRINGEMENT UNDER THE LANHAM ACT, 15 U.S.C. §1114(1)(a)

30. Stephens repeats and realleges the allegations set forth in Paragraphs 1 through 21 above.

31. Defendants are using and/or have used the Stephens Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of goods and services, with knowledge that Defendants' use of the Stephens Marks in commerce constitutes the use of a counterfeit mark or designation (the "Infringing Use").

32. The Infringing Use is likely to cause confusion, cause mistake, or deceive consumers and the public with respect to the goods and services offered in commerce by Defendants.

33. Defendants have willfully engaged in the Infringing Use with knowledge that the Infringing Use constitutes an infringement of the Stephens Marks.

7

34. The Infringing Use has damaged and will continue to damage the reputation and goodwill of Stephens established in connection with the Stephens Marks, in violation of §32 of the Lanham Act (15 U.S.C. §1114).

35. Stephens has sustained actual damages as a direct and proximate result of the Infringing Use, and Defendants are liable to Stephens for the amount of those actual damages pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

36. Defendants have profited as a direct and proximate result of the Infringing Use, and Defendants are liable to Stephens for the amount of those profits pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

37. Defendants are liable to Stephens for three times Stephens' actual damages or Defendants' profits resulting from the Infringing Use, whichever is greater, plus prejudgment interest on such amount; or, in the alternative, to statutory damages not exceeding $2,000,000 per type of goods and services sold, offered for sale, or distributed by Defendants under the Infringing Mark, pursuant to §35 of the Lanham Act (15 U.S.C. §1117) as amended by the Prioritizing Resources and Organization for Intellectual Property Act of 2008.

38. Defendants' acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stephens in an amount Stephens cannot ascertain, leaving Stephens with no adequate remedy at law.

39. Unless Defendants are preliminarily and permanently enjoined from further infringement by Defendants of the Stephens Marks, Stephens will be irreparably harmed, and Stephens is thus entitled to preliminary and permanent injunctive relief against further infringement by Defendants of the Stephens Marks, pursuant to §34 of the Lanham Act (15 U.S.C. §1116).

40. Stephens has been required to retain an attorney to prosecute this action, and Defendants are liable to Stephens for Stephens' attorney fees incurred in connection with the prosecution of this action, pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

41. Stephens has incurred costs of suit in connection with bringing this action, and Defendants are liable to Stephens for those costs of suit pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

## SECOND CAUSE OF ACTION

**FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT, 15 U.S.C. §1125(a)**

42. Stephens repeats and realleges the allegations set forth in Paragraphs 1 through 33 above.

43. The Infringing Use constitutes a false designation of origin and a false description and representation of Defendants' business and goods and services, which has damaged and will continue to damage the reputation and goodwill of Stephens established in connection with the Stephens Marks, in violation of §43(a) of the Lanham Act (15 U.S.C. §1125(a)).

44. Stephens has sustained actual damages as a direct and proximate result of the Infringing Use, and Defendants are liable to Stephens for the amount of those actual damages pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

45. Defendants have profited as a direct and proximate result of the Infringing Use, and Defendants are liable to Stephens for the amount of those profits pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

46. Defendants are liable to Stephens for up to three times Stephens' actual damages, plus Defendants' profits, resulting from the Infringing Use.

47. Defendants' acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stephens in an amount Stephens cannot ascertain, leaving Stephens with no adequate remedy at law.

48. Unless Defendants are preliminarily and permanently enjoined from further infringement by Defendants of the Stephens Marks, Stephens will continue to be irreparably harmed, and Stephens is thus entitled to preliminary and permanent injunctive relief against further infringement by Defendants of the Stephens Marks, pursuant to §34 of the Lanham Act (15 U.S.C. §1116).

49. Stephens has been required to retain an attorney to prosecute this action, and Defendants are liable to Stephens for Stephens' attorney fees incurred in connection with the prosecution of this action, pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

50. Stephens has incurred costs of suit in connection with bringing this action, and Defendants are liable to Stephens for those costs of suit pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

## THIRD CAUSE OF ACTION
## MARK DILUTION UNDER THE LANHAM ACT, 15 U.S.C. §1125(c)

51. Stephens repeats and realleges the allegations set forth in Paragraphs 1 through 42 above.

52. During the over 25 years in which the Stephens Marks have been in continuous use and subject to extensive marketing, the Stephens Marks have acquired a high level of distinctiveness and fame in connection with Stephens' provision of goods and services under the Stephens Marks.

53. The Stephens Marks were famous when Defendants began using the Infringing Mark in interstate commerce.

54. Defendants' wrongful use of the Infringing Mark was willful, and Defendants willfully intended to trade on the recognition of the Stephens Marks when Defendants used the Infringing Mark.

55. Defendants commenced Defendants' use of the Infringing Mark after October 6, 2006.

56. Defendants' use of the Infringing Mark, which is identical or nearly identical to the Stephens Marks, causes dilution of the distinctive quality of the Stephens Marks, and such dilution has damaged and will continue to damage the reputation and goodwill of Stephens established in connection with the Stephens Marks, in violation of §43(c) of the Lanham Act (15 U.S.C. §1125(c)).

57. Stephens has sustained actual damages as a direct and proximate result of the Infringing Use, and Defendants are liable to Stephens for the amount of those actual damages pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

58. Defendants have profited as a direct and proximate result of the Infringing Use, and Defendants are liable to Stephens for the amount of those profits pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

59. Defendants are liable to Stephens for up to three times Stephens' actual damages, plus Defendants' profits, resulting from the Infringing Use.

60. Defendants' acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stephens in an amount Stephens cannot ascertain, leaving Stephens with no adequate remedy at law.

61. Unless Defendants are preliminarily and permanently enjoined from further infringement by Defendants of the Stephens Marks, Stephens will be irreparably harmed, and Stephens is thus entitled to preliminary and permanent injunctive relief against further infringement by Defendants of the Stephens Marks, pursuant to §34 of the Lanham Act (15 U.S.C. §1116).

62. Stephens has been required to retain an attorney to prosecute this action, and Defendants are liable to Stephens for Stephens' attorney fees incurred in connection with the prosecution of this action, pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

63. Stephens has incurred costs of suit in connection with bringing this action, and Defendants are liable to Stephens for those costs of suit pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

## FOURTH CAUSE OF ACTION
## MARK INFRINGEMENT UNDER NEVADA COMMON LAW

64. Stephens repeats and realleges the allegations set forth in Paragraphs 1 through 55 above.

65. The Infringing Use is likely to cause confusion, cause mistake, or deceive consumers and the public with respect to the goods and/or services offered in commerce by Defendants, in violation of the common law of the State of Nevada.

66. The Infringing Use has damaged and will continue to damage the reputation and goodwill of Stephens established in connection with the Mark.

67. Defendants engaged in the Infringing Use oppressively, fraudulently, and maliciously.

68. Stephens has sustained actual damages as a direct and proximate result of the Infringing Use, and Defendants are liable to Stephens for the amount of those actual damages.

69. Defendants have profited as a direct and proximate result of the Infringing Use, and Defendants are liable to Stephens for the amount of those profits.

70. Defendants' acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stephens in an amount Stephens cannot ascertain, leaving Stephens with no adequate remedy at law.

71. Unless Defendants are preliminarily and permanently enjoined from further infringement by Defendants of the Stephens Marks, Stephens will be irreparably harmed, and Stephens is thus entitled to preliminary and permanent injunctive relief against further infringement by Defendants of the Stephens Marks.

72. Defendants' fraudulence, maliciousness, and oppressiveness in engaging in the Infringing Use entitles Stephens to punitive damages pursuant to NRS 42.005.

73. Stephens has been required to retain an attorney to prosecute this action, and Defendants are liable to Stephens for Stephens' attorney fees incurred in connection with the prosecution of this action.

74. Stephens has incurred costs of suit in connection with bringing this action, and Defendants are liable to Stephens for those costs of suit.

## FIFTH CAUSE OF ACTION
## MARK DILUTION UNDER NRS 600.435

75. Stephens repeats and realleges the allegations set forth in Paragraphs 1 through 66 above.

76. During the over 25 years in which the Stephens Marks have been in continuous use and subject to extensive marketing, the Stephens Marks have acquired a high level of distinctiveness and fame in connection with Stephens' provision of goods and services under the Stephens Marks.

77. The Stephens Marks were famous when Defendants began using the Infringing Mark in interstate commerce.

78. Defendants' wrongful use of the Infringing Mark was willful, and Defendants willfully intended to trade on the recognition of the Stephens Marks when Defendants commenced use of the Infringing Mark.

79. Defendants commenced Defendants' use of the Infringing Mark after December 5, 2000.

80. Defendants' use of the Infringing Mark, which is identical or nearly identical to the Stephens Marks, causes dilution of the capacity of the Stephens Marks to identify and distinguish goods and/or services, and such dilution has damaged and will continue to damage the reputation and goodwill of Stephens established in connection with the Stephens Marks, in violation of NRS 600.435.

81. Defendants have profited as a direct and proximate result of Defendants' willful Infringing Use, and Defendants are liable to Stephens for the amount of those profits, pursuant to NRS 600.435(3).

82. Defendants are liable to Stephens for up to three times Stephens' actual damages, plus Defendants' profits, resulting from the Infringing Use, pursuant to NRS 600.435(3).

83. Defendants' acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stephens in an amount Stephens cannot ascertain, leaving Stephens with no adequate remedy at law.

84. Unless Defendants are preliminarily and permanently enjoined from further infringement by Defendants of the Stephens Marks, Stephens will be irreparably harmed, and Stephens is thus entitled to preliminary and permanent injunctive relief against further infringement by Defendants of the Stephens Marks, pursuant to NRS 600.435(3).

85. Stephens has been required to retain an attorney to prosecute this action, and Defendants are liable to Stephens for Stephens' attorney fees incurred in connection with the prosecution of this action, pursuant to NRS 600.435(3).

86. Stephens has incurred costs of suit in connection with bringing this action, and Defendants are liable to Stephens for those costs of suit pursuant to NRS 600.435(3).

## SIXTH CAUSE OF ACTION

## MISAPPROPRIATION OF LICENSABLE COMMERCIAL PROPERTY UNDER NEVADA COMMON LAW

87.     Stephens repeats and realleges the allegations set forth in Paragraphs 1 through 78 above.

88.     Stephens has invested significant time, effort, and money in creating, publicizing, and protecting the Stephens Marks and developing the valuable goodwill arising from and associated with the Stephens Marks (collectively the "Commercial Property").

89.     Stephens has licensed and continues to license the Commercial Property in return for value.

90.     The Infringing Mark is a commercial property that may be licensed for value.

91.     Defendants do not have and have never had the legal right, authority, or license to use the Infringing Mark.

92.     Defendants' wrongful use of the Infringing Mark, undertaken without authority from Stephens, deprived Stephens of the commercial value of the Infringing Mark.

93.     Stephens has sustained and will continue to sustain damages as a direct and proximate result of Defendants' misappropriation of Stephens' licensable Commercial Property, and Defendants are liable to Stephens for the amount of those present and future damages.

94.     Defendants' acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stephens in an amount Stephens cannot ascertain, leaving Stephens with no adequate remedy at law.

95.     Stephens is entitled to preliminary and permanent injunctive relief against further misappropriation by Defendants of Stephens' licensable Commercial Property.

96.     Stephens has been required to retain an attorney to prosecute this action, and Defendants are liable to Stephens for Stephens' attorney fees incurred in connection with the prosecution of this action.

97.     Stephens has incurred costs of suit in connection with bringing this action, and Defendants are liable to Stephens for those costs of suit.

## SEVENTH CAUSE OF ACTION

## UNJUST ENRICHMENT

98. Stephens repeats and realleges the allegations set forth in Paragraphs 1 through 89 above.

99. Stephens owns the Stephens Marks.

100. Defendants do not have and have never had authority to use the Stephens Marks.

101. Defendants' use of the Infringing Mark is in furtherance of Defendants' own economic gain by promoting Defendants' goods and services to customers and the public.

102. Defendants accepted and retained all of the profits and benefits of Defendants' unauthorized use of the Infringing Mark.

103. Stephens is entitled to recover an amount by which Defendants have been unjustly enriched through Defendants' unauthorized use of the Infringing Mark.

104. As a result of Defendants' acts as alleged herein, Stephens has suffered and will continue to suffer damage to Stephens' business, goodwill, reputation, and profits, while Defendants profit at Stephens' expense.

## PRAYER FOR RELIEF

Stephens requests that this Court grant Stephens' claims for relief herein as follows:

1. Preliminarily and permanently enjoin and restrain Defendants, and Defendants' officers, agents, servants, employees, attorneys, parents, subsidiaries, related companies, partners, and all persons acting for, by, with, through, or under Defendants, from:

   a. Directly or indirectly infringing the Stephens Marks by marketing, offering, selling, disposing of, licensing, leasing, transferring, displaying, advertising, reproducing, exhibiting, exploiting, or causing the marketing, offering, selling, disposing, licensing, leasing, transferring, displaying, advertising, reproducing, exhibiting, exploiting, developing, manufacturing, or linking of any goods or services derived from or bearing

15

         the Stephens Marks, or to order, direct, participate in, or assist in any such activity; and

    b.    Using in any manner the Stephens Marks and any term or terms likely to cause confusion therewith, including, without limitation, the Infringing Mark (BEST OF LAS VEGAS) and any variant thereof, in connection with the retrieval of data or information on Defendants' goods or services, or in connection with the advertising or promotion of Defendants' goods, services, or websites, or ordering, directing, participating in, or assisting in any such use;

2.    Direct Defendants to preserve, retain, and deliver to Stephens' counsel in hard copies or electronic copies:

    a.    All evidence and documentation relating in any way to Defendants' use of the Infringing Mark and the Stephens Marks, in any form, including, without limitation, all such evidence and documentation relating to goods or services bearing the Infringing Mark, to the USCA Website, or to any other websites relating to the Infringing Mark;

    b.    All evidence and documentation relating to the names and addresses (whether electronic mail addresses or otherwise) of any person with whom Defendants have communicated regarding Defendants' use of the Infringing Mark; and

    c.    All financial evidence and documentation relating to Defendants' goods and services, to the extent such financial evidence and documentation relates to Defendants' use of the Infringing Mark;

3.    Direct Defendants to file with this Court and serve upon Stephens' counsel, within 30 days after entry of injunctive relief against Defendants, a report in writing, under oath, setting forth in detail the manner and form in which Defendants complied with such injunction, pursuant to 15 U.S.C. §1116(a);

4.    Enjoin Defendants from engaging in any further unlawful and/or wrongful acts as alleged herein, including, without limitation, mark infringement, false designation

16

of origin, or mark dilution as set forth in the Lanham Act, 15 U.S.C. §1051 *et seq.,* and any mark infringement, mark dilution, misappropriation of commercial property, and unjust enrichment in violation of Nevada law;

5. Direct Defendants to produce an accounting of Defendants' profits derived through any of the acts alleged herein;

6. Award Stephens Defendants' profits derived from the use of the Infringing Mark and three times Stephens' damages suffered by reason of Defendants' willful and wrongful acts, and/or, pursuant to 15 U.S.C. §1117, award Stephens statutory damages of no less than $1,000.00 as a result of Defendants' wrongful acts,

7. Award Stephens costs, disbursements, and attorneys' fees incurred in bringing this action;

8. Award Stephens pre- and post-judgment interest in accordance with applicable law; and

9. Grant Stephens such other relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Stephens requests a trial by jury pursuant to Fed.R.Civ.P. 38.

Dated this 21st day of December, 2009.

                                        GIBSON LOWRY BURRIS LLP

                                        By:    /s/J.D. Lowry
                                                    Steven A. Gibson
                                                    Nevada Bar No. 6656
                                                    Jodi Donetta Lowry
                                                    Nevada Bar No. 7798
                                                    7201 West Lake Mead Boulevard, Suite 503
                                                    Las Vegas, Nevada 89128
                                                    Attorneys for Stephens Media LLC